STATE vs. SAMUEL JACKSON AND EZEKIEL GEORGE.

1.  HOMICIDE—ASSAULT WITH INTENT TO KILL—ELEMENTS.

On a trial for assault with intent to murder, the state must prove the assault, the intent to murder, and that; if the prosecuting witness had died from the injuries inflicted, the accused would have been guilty of murder.

2.  HOMICIDE—ASSAULT WITH INTENT TO KILL—"INTENT"—EVIDENCE.

On a trial for assault with intent to murder, the murderous "intent" may be proved, either by direct evidence or by acts and conduct from which it may be reasonably inferred, such as the voluntary use of a deadly weapon in an unlawful manner, or under circumstances directly tending to great bodily harm, or to imperil human life.

3.  CRIMINAL LAW—INTENT—PRESUMPTION FROM ACT.

A person is presumed to intend the natural and probable consequences of his own voluntary act.

Syllabus.

4. Homicide—"Murder"—Elements.

"Murder" is the unlawful killing of a human creature in being with malice aforethought, either express or implied.

5. Homicide—Murder—"Malice"—Evidence.

The "malice" which would make an act murder may be proved by direct evidence, or may be implied from any unlawful act, indicating a wicked heart bent on mischief, or a reckless disregard of human life, such as the deliberate selection and use of a deadly weapon.

6. Homicide—"Manslaughter"—Elements.

"Manslaughter" is the unlawful killing of another without malice, in a sudden affray, in the heat of blood, or in a transport of passion, without time for reflection, or for the passions to cool.

7. Homicide—Murder—Malice—Presumption.

The law presumes that a deliberate, cruel act by one person against another, no matter how suddenly done, is committed maliciously; and hence, if death results from such act, it is incumbent on accused to show the absence of malice, or the killing will be murder.

8. Criminal Law—Evidence—Confessions.

A confession by a person accused of crime, not made under oath in a judicial proceeding, or in the presence of a co-defendant, is not competent evidence against such co-defendant.

9. Criminal Law—Trial—Degree of Proof.

The state must prove the guilt of a person accused of crime beyond a reasonable doubt; the presumption, independent of the evidence, being that he is innocent.

10. Criminal Law—Reasonable Doubt.

The reasonable doubt, which will justify a verdict of not guilty, must be a substantial doubt, which men of intelligence and discernment might entertain and be able to express or define, after a consideration of the evidence.

11. Homicide—Verdict—Degree of Offense.

In a prosecution for assault with intent to murder, if the jury believe that accused committed the assault, but are not satisfied beyond a reasonable doubt of the murderous intent, they should find the accused guilty of assault only.

12. Criminal Law—Verdict—Co-defendants.

Where two persons are jointly indicted and tried for assault with intent to commit murder, the jury may find either or both guilty, not guilty, or guilty of assault only.

13. Criminal Law—Principal Offense.

A person present and aiding, abetting, or counseling another to commit an assault is guilty of the same offense, whether mere assault, or assault with intent to murder, as the party committing the act.

*(January 9, 1912.)*

·    Judges CONRAD and WOOLLEY sitting.

*Josiah O. Wolcott,* Deputy Attorney General, for the state.
*William G. Jones, Jr.,* and *Richard S. Rodney* for the prisoners.

Court of General Sessions, New Castle County, January Term, 1912.

INDICTMENT (No. 41, January Term, 1912) FOR AN ASSAULT WITH INTENT TO COMMIT MURDER.

At the trial, the prosecuting witness, one Drejko, testified that he lived on a farm in Mill Creek Hundred, and that on October 28, 1911, about eight o'clock in the evening he took a lighted lantern, and with his young son, a boy about eleven years of age, went from his dwelling house to his barn, and that as he opened the barn door and started in he was struck a violent blow upon the head by some one whom he did not see, and was rendered unconscious by the blow. The said son of the prosecuting witness testified that on Friday before the assault he was beaten by Jackson, one of the defendants, and that Jackson then said to him, "Your father has four or five dollars always at home?" to which the witness replied, "No; he has not," and that when he went to the barn with his father, the prosecuting witness, on the night of the assault, he saw a big colored man who looked like Jackson, one of the prisoners, standing at the gate, and saw him hit his father—rather heard the blow land on his father's head, but did not see what Jackson hit him with, because he was frightened and ran through the barn and out of the window and went home; that while in the barn he heard his father say, "Let me go."

One M., who worked for the prosecuting witness, testified that he was in the house when Drejko and his son took the lantern and started to the barn, and that in about five minutes he heard the cry of murder from the barn and ran out and saw the forms of two colored men running from the barn towards himself, and that they both struck him on the head and knocked him down. He could not identify the prisoners as being the men who struck him.

The prisoner Jackson admitted that he was present at the barn of Drejko with George, the other prisoner, on the night in

Charge.

question; stating that he asked Drejko to pay him some money he owed him for cutting corn and that Drejko replied that he didn't have it. Jackson then said, "I am not coming after this money any more. The next time I will send the sheriff for it." That Drejko then struck Jackson with his lantern and reached over for a stick lying on the ground, but Jackson picked up the stick,—a piece of singletree—and struck Drejko twice over the head with it, but did not knock him down. That George then struck Drejko upon the head with a stone wrapped in a pocket handkerchief and knocked Drejko down. That they then left the barn yard and went home.

The defendant George testified that he went with Jackson from his home in Wilmington out to Drejko's house to collect the money that Jackson said Drejko owed him; that on the way he was told by Jackson that Drejko had some bad dogs, and that he accordingly got a smooth stone and wrapped it in a blue handkerchief that he had, so as to be prepared for the dogs. That he waited near the barn while Jackson went to ask Drejko for the money, and upon hearing Jackson call, "I am in a jam—help!" he ran up and was met by the witness M., who struck him and knocked him down; that M. struck at him as if to cut him, but did not hit him; that he thereupon struck M. two or three times with his fist, and hit him once with the said stone. He denied having hit Drejko at all.

WOOLLEY, J., charging the jury:

Gentlemen of the jury:—[1] The prisoners at the bar are charged with having committed an assault upon one Peter Drejko, the prosecuting witness, with intent him, the said Drejko, to murder. This charge embraces not only an assault, which is an attempt with force and violence to do injury to the person of another, but also an intent to commit murder, to convict the prisoner of which it is necessary for the state to prove that the assault was committed by the prisoners, that it was committed with the intent to murder Drejko, the prosecuting witness, and that, if Drejko had died from the effects of the injury inflicted, then the prisoners would have been guilty of murder.

Charge.

[2, 3]   The intent to commit murder is an essential ingredient of the crime, and is the element which distinguishes it from assaults of other characters.   It may be shown either by direct evidence or by the acts and conduct of the accused from which the murderous intent may rationally and reasonably be inferred. It is a principle of law that every man is presumed to intend the natural and probable consequences of his own voluntary and wilful act, so that from the voluntary use of a deadly weapon, as a gun, pistol, or heavy club; by one against another in an unlawful manner, or in a way or under circumstances that directly tend to great bodily harm or that imperil human life, the state may prove and the jury infer the intent to murder.

Before you can find the prisoners guilty of assault with intent to commit murder, you must also find that, had Drejko died from the effects of the injuries received or attempted, the prisoners would have been guilty of the crime of murder.   It is therefore necessary to instruct you with respect to that crime.

[4, 5]   The crime of murder is the unlawful killing of a human creature in being with malice aforethought, either express or implied.   To convict of this crime it is as important to prove the presence of malice as the act of killing.   Malice may be proved by direct evidence when it is express or it may be implied from any unlawful act, such as in itself denotes a wicked heart fatally bent on mischief, or a reckless disregard of human life.   The deliberate selection and use of a deadly weapon is evidence of malice;   and where malice exists, together with the killing, the crime of murder is complete.

[6]   Manslaughter, however, is the unlawful killing of another without malice, and is committed where one in a sudden affray, in the heat of blood or in a transport of passion, without malice, inflicts a mortal wound, without time for reflection or for the passions to cool.   Therefore, if you believe the prisoners' acts were without malice and that manslaughter and not murder would have been the crime of which the prisoners would have been guilty, had death ensued to the prosecuting witness, the prisoners cannot be found guilty of the intent to commit murder.

[7]   Malice is implied by law from every deliberate cruel act .

committed by one person against another, no matter how sudden such act may be, for the law considers that he who does a cruel act voluntarily does it maliciously. And whenever such an act from which death ensues is proven by the prosecution unaccompanied by circumstances of justification, excuse or mitigation, the law presumes that the homicide was committed with malice, and it is thereupon incumbent upon the accused to show by evidence that the killing was not malicious and therefore does not amount to murder.

[8]   In this case each of the prisoners made written confessions, which have been offered and admitted in evidence, and which recount his own acts and to an extent the acts of the other, with their consequent implications. These confessions respectively constitute evidence only against him who made them, and not against his fellow, who cannot be bound or hurt by the statement of his associate made neither in his presence nor under oath in a judicial proceeding.

[9]   All of the presumptions of law, independent of evidence, are in favor of innocence, and every person is presumed to be innocent of crime until proven guilty. It therefore devolves upon the state to maintain its issue and prove the guilt of the prisoner beyond a reasonable doubt.

[10]   Reasonable doubt is an expression rather well understood but not easily defined. It is not a mere possible doubt, because everything relating to human affairs is open to some possible, imaginary or speculative doubt. It is a real and substantial doubt founded in reason and such as men of intelligence and discernment may entertain, and, if necessary, be able to express or define, after a careful consideration of all the evidence in the case.

If, after considering all of the evidence in the case, and reconciling it where it is conflicting, by giving credit to that which is most worthy of credit and rejecting that which is least worthy of credit, having regard to the intelligence, fairness and bias of the witnesses, you entertain a reasonable doubt of the guilt of the prisoners, that doubt should be resolved in their favor and your verdict should be not guilty.

[11]   If, however, you believe beyond a reasonable doubt that the prisoners did commit the assault, but are not satisfied that they had an intent to commit murder, your verdict should be not guilty in manner and form as they stand indicted, but guilty of assault only; but if you believe the prisoners not only committed the alleged assault, but that it was done maliciously and with the intention to murder Drejko, and that had Drejko died from the effects of the injuries inflicted, the crime would have been murder, then your verdict should be guilty in manner and form as the prisoners stand indicted.

[12]   As there are two prisoners, charged with participation in the alleged assault, it is possible that you may find that they participated, if at all, in different ways, thereby requiring different verdicts.

Therefore, we say to you, by applying the law to the evidence that relates jointly or severally to the two prisoners, you may find one or both of them not guilty, or one or both of them guilty as indicted or guilty of assault only.

[13]   If you find that one of the prisoners assaulted Drejko and that the other did not assault him but was then and there present, aiding, abetting or counseling the one who committed the act, he who so aided is deemed in law an accomplice and equally criminal with his principal and should be found guilty of the same offense, whether that be guilty of assault with intent to murder or guilty of assault only.

Verdict, both guilty.